FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS 2007 JUL 27 P 12: 46

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA )
)
v. ) Crim. No.
)
) Violation:  18 USC 286
AGGREGATE INDUSTRIES )
NORTHEAST REGION, INC. )
F/K/A BARDON TRIMOUNT, )
) **07 CR 10.2.4 2 JLT**
Defendant. )
)

## INFORMATION

THE UNITED STATES ATTORNEY in and for the District of
Massachusetts charges that:

## COUNT ONE
(Conspiracy to defraud the Government with respect to claims)

At times material to this Information:

1.    The Central Artery/Tunnel (hereinafter "CA/T") project,
colloquially known as the "Big Dig," was a multi-billion dollar
Interstate Highway System public construction project in the city
of Boston funded by agencies and departments of the state and
federal government.  The CA/T project built or reconstructed
about 7.5 miles of urban highways, about half of them
underground.

2.    The Federal Highway Administration (hereinafter "FHWA")
is an operating administration of the United States Department of
Transportation which administers the distribution of federal
funds to state and local agencies responsible for building and
maintaining roadways, bridges and tunnels.  FHWA's functions, as

delegated by the United States Secretary of Transportation, included approving CA/T construction projects and distributing federal highway construction funds for use on CA/T construction projects to the Commonwealth of Massachusetts. A series of Congressional acts authorized federal funds to be spent on the CA/T project. In 1987, Congress passed The Surface Transportation and Uniform Relocation Assistance Act of 1987. The 1987 Act was followed by The Intermodal Surface Transportation Efficiency Act in 1991. On June 9, 1998, Congress passed The Transportation Equity Act for the 21st Century. Finally, on August 10, 2005, Congress passed The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users. By project's end, the federal government will have spent approximately $8.549 billion on the Big Dig.

　　　3.　　The Massachusetts Highway Department (hereinafter "MHD") was responsible for all aspects of CA/T construction projects from approximately 1989 through 1997. In or about March 1997, the Massachusetts Legislature passed the Metropolitan Highway System (MHS) Act, which gave the Massachusetts Turnpike Authority (hereinafter "MTA") responsibility for supervising the completion of the CA/T. After passage of the MHS, MHD remained responsible for soliciting bids, awarding CA/T contracts, and making payments to CA/T contractors on behalf of the Commonwealth of Massachusetts. MHD also ensured that the FHWA reimbursed the

2

Commonwealth of Massachusetts for the federal contribution toward the work actually performed and materials actually used on CA/T construction projects. After passage of the MHS, MTA's responsibilities included direct oversight and project management of the day to day operations of the CA/T. These responsibilities included, among others:

(a) inspecting work performed and materials used by said private contractors to ensure that they were in accordance with contract specifications; and

(b) ensuring that said private contractors working on CA/T construction projects charged the Commonwealth of Massachusetts only for work performed and materials actually used during the performance of CA/T contracts.

4.     C17A1 was one of the CA/T "mainline tunnel" contracts which encompassed the northbound lanes of Interstate 93 (hereinafter "I-93") from Congress Street to High Street and the southbound lanes of I-93 from High Street to Oliver Street. A major part of the contract included the construction of the tunnel walls, base slab, and roof slab which were all made, in whole or in part, from concrete. Modern Continental Corporation (hereinafter "MCC") was the general construction contractor on C17A1.

5.     C17A9 was also one of the CA/T mainline tunnel contracts which encompassed the northbound and southbound lanes

3

of I-93 from High Street to State Street as well as the modernization of Massachusetts Bay Transit Authority Aquarium Station. The contract called for the construction of the tunnel walls, temporary decking, caissons, base slab, and roof slab which were all made, in whole or in part, from concrete. A joint venture between MCC and Obayashi USA was the general construction contractor on C17A9.

6. C17A6 was also one of the CA/T "mainline tunnel" contracts which encompassed, among other things, the southbound lanes of I-93 from Kneeland Street to Oliver Street. The contract included the construction of cut-and-cover tunnels, drilled shaft foundations, ramps and bridges which were all made, in whole or in part, from concrete. Particularly, the tunnel walls, base slab, and roof slab were made, in whole or in part, from concrete. MCC was the general construction contractor on C17A6.

7. C09A4 was the CA/T contract for the I-93 northbound interchange at the Massachusetts Turnpike (hereinafter "I-90"). A major part of the contract included the construction of surface roads, boat sections, tunnel sections and viaducts which were all made, in whole or in part, from concrete. A joint venture between J.F. White Contracting Company/Slattery Associates/Interbeton, Inc. and Perini Corporation was the general construction contractor on C09A4.

4

8.   C09B1 was the CA/T contract for the I-90 Fort Point
Channel Crossing.  A major part of the contract included the
construction of cut and cover tunnels in multiple areas, the
construction and installation of six concrete immersed tube
tunnel sections under the Fort Point Channel, and the
construction of two bridges, which were all made, in whole or
part, from concrete.  MCC was the general construction contractor
on C09B1.

9.   Often, CA/T tunnel walls were constructed using a
building method known as "slurry wall construction."  "Slurry"
was a viscous liquid ordinarily containing bentonite clay which
held excavations open prior to concrete placement.  The tunnel
walls on contracts C17A1 and C17A9 were "slurry walls."  The base
slab was a concrete slab between two slurry walls upon which the
tunnel roadway was built.  A concrete "mud mat" was poured before
the base slab and waterproofing materials were applied to the mud
mat before the base slab was constructed.  The roof slab was a
concrete slab which formed the tunnel ceiling and spanned the
area between two or more slurry walls.  The roof slab was
underground and was generally covered by surface roadways and
parkland.  Deep duct shafts connected the tunnels to surface vent
buildings, and sometimes were installed beneath the mud mat.
Drilled shafts were vertical concrete underground columns which
generally encased steel beams used to support tunnel structures.

5

These deep duct shafts and drilled shafts were also constructed using the slurry methodology.

10.  CA/T project-wide specifications and supplemental specifications were issued by the CA/T to define materials and methods for the concrete used on the various contracts mentioned above.  Furthermore, each contract also contained additional contract specific specifications.  Accordingly, specifications regarding the type, strength and properties of concrete were set forth in detail by the CA/T.  General construction contractors were required to submit specific formulas, known as "mix designs," for concrete consistent with project and contract specifications.  Such submissions, known as "submittals," were subject to review and approval by the CA/T before use on the project.  The CA/T project-wide supplemental specifications, and contract specifications through reference to the CA/T specifications, generally prohibited the addition of water to concrete after the concrete was mixed or "batched" except in certain defined and controlled circumstances.  Furthermore, the aforementioned specifications strictly prohibited the use of concrete where more than ninety (90) minutes had passed between the time the concrete had been batched and the time it was placed or poured.  Concrete more than ninety (90) minutes old was known as "old concrete."

11.  The CA/T supplemental specifications also required that

6

the concrete plants produce "batch reports" or "batch slips" for each truckload of concrete. The CA/T specifications required that these batch reports provide the following information: date and time of batching, concrete plant number, identification number identical to that of the concrete delivery ticket, code for mix design, and construction contract number. The CA/T further required the delivery of a copy of the batch report to the CA/T engineer at the time of concrete placement. CA/T inspectors relied on the accuracy of the information provided on the batch reports.

12. The defendant AGGREGATE INDUSTRIES NORTHEAST REGION, INC. FKA BARDON TRIMOUNT (hereinafter "AGGREGATE") is a wholly owned subsidiary of Aggregate Industries Management, Inc. FKA Barson U.S. Corporation headquartered in Rockville, Maryland. Prior to March 2005, Aggregate Industries, Inc. was owned by Bardon U.S. Corporation located in Leicestershire, England. In approximately March 2005, Aggregate Industries PLC was purchased by Holcim Ltd, located in Jona Canton of St. Gallen, Switzerland. The defendant AGGREGATE was in the business of manufacturing and supplying ready-mix concrete and bituminous asphalt (which was used for paving roadways). The defendant AGGREGATE owned and operated numerous concrete and asphalt plants as well as stone quarries in the District of Massachusetts and elsewhere. The defendant AGGREGATE divided its business operations into three

7

separate "divisions."   These divisions were known as the concrete division, the asphalt division, and the construction division. The defendant AGGREGATE had business offices located at 1751 Broadway in Saugus, Massachusetts.

13.   The defendant AGGREGATE manufactured and supplied the concrete that was used by the general contractors mentioned above in the construction of slurry walls, base slabs, roof slabs and other concrete structures for CA/T contracts C17A1, C17A9, C17A6, C09A4, and C09B1, among others.   This concrete was regularly delivered in trucks which carried approximately ten cubic yards of concrete.

14.   Continuously from in or about and between 1996 and August 2005, in the District of Massachusetts and elsewhere, the defendant

AGGREGATE INDUSTRIES NORTHEAST REGION, INC.

F/K/A BARDON TRIMOUNT,

and others known and unknown to the Grand Jury, did unlawfully and knowingly combine, conspire, confederate and agree together and with each other to defraud the United States and an agency thereof, the United States Department of Transportation, by obtaining and aiding to obtain the payment and allowance of false, fictitious and fraudulent claims in violation of Title 18, United States Code, Section 287 in that the defendants and others known and unknown to the grand jury did conspire, confederate and

8

agree (1) to provide concrete to the general construction

contractors on the CA/T contracts described above which concrete

did not meet the requirements of the CA/T project and (2) to

provide false documents to said general construction contractors

to conceal the substandard nature of the concrete knowing that

said documents were required by the CA/T project and would be

used as part of a claim for payment from the CA/T project.

<u>METHODS AND MEANS OF THE CONSPIRACY</u>

15. It was a part of the conspiracy that the defendant and

its co-conspirators did recycle concrete that was more than

ninety (90) minutes old, had been adulterated with the addition

of excess water, and was not batched pursuant to CA/T project

specifications. The defendant and its co-conspirators delivered

at least 5,000 truckloads of such concrete to CA/T projects.

16. It was a part of the conspiracy that concrete trucks

containing "leftover" concrete, <u>i.e.</u>, concrete that had not been

used by the previous customer, were "loaded over" with some

amount of CA/T project concrete and delivered to the CA/T

project. These loads of leftover concrete were dubbed "10-9

loads" by the members of the conspiracy. 10-9 loads included

concrete that did not meet the CA/T projects specifications,

concrete that was older than 90 minutes, and concrete that had

already been rejected by CA/T inspectors.

17. It was a part of the conspiracy that concrete trucks

9

that had been rejected by CA/T inspectors were routed back to the CA/T project by the defendant and its co-conspirators. The basis for rejection did include, at times, the fact that the concrete had exceeded the ninety (90) minute time limit or otherwise did not meet CA/T specifications.  On those occasions where the delay was caused by the general construction contractor, the defendant was paid twice for delivering the same load of concrete to the CA/T project.

18.  It was a part of the conspiracy that in order to conceal this fraud, the defendant and its co-conspirators added excess amounts of water as well as other ingredients to 10-9 loads to make those loads appear to be freshly batched.

19.  It was a part of the conspiracy that in order to conceal this fraud, false batch reports were created by the defendant and its co-conspirators which falsely reported that the concrete had been batched within the applicable time period.  On those occasions when the 10-9 loads did not contain the CA-T project formula or "mix," the batch report also falsely identified the load as the correct CA/T mix.

20.  It was a part of the conspiracy that the defendant and its co-conspirators delivered these false batch reports to CA/T project inspectors to induce the inspectors to accept the 10-9 loads.

21.  It was a part of the conspiracy that the defendant and

its co-conspirators caused these false batch reports to become
part of the records of the CA/T project knowing that the MTA
would rely upon the false batch reports to determine the quality
and amount of concrete placed by the general construction
contractor as well as to document a basis for payment to the
general construction contractor.

22.   It was a part of the conspiracy that the defendant and
its co-conspirators caused invoices to be delivered to the
general construction contractors which required payment for the
concrete loads described below in paragraphs 24 through 28 by
placing said invoices in the mail for delivery by the United
States Postal Service and by causing said invoices to be
delivered by private and commercial interstate carriers.

### OVERT ACTS

23.   In furtherance of the conspiracy and to effect the
objects thereof, the defendants and their co-conspirators
committed and caused to be committed, in the District of
Massachusetts and elsewhere, numerous overt acts including those
set forth below in paragraphs 24 through 28.   Each of the
following overt acts involved the delivery of a truckload of
concrete which contained, in whole or in part, concrete which was
more than 90 minutes old and/or did not meet CA/T specifications.

11

24.  Overt Acts regarding C17A1:

| Overt Act | Truck No. and Delivery Date | Total Amount of Concrete Load | Amount of Old and/or Non-Spec. Concrete Delivered | Location of Concrete Placement |
|---|---|---|---|---|
| 24(a) | 162; 4/16/99 | 10 yds | 6 yds old/non-spec. | slurry wall panel M-44, I-93 Northbound Tunnel |
| 24(b) | 191; 4/16/99 | 10 yds | 2.5 yds old/non-spec. | slurry wall panel M-44, I-93 Northbound Tunnel |
| 24(c) | 34; 4/22/99 | 10 yds | 6 yds old/non-spec. | slurry wall panel M-46, I-93 Northbound Tunnel |
| 24(d) | 210; 4/22/99 | 10 yds | 10 yds old/non-spec. | slurry wall panel M-46, I-93 Northbound Tunnel |
| 24(e) | 192; 4/22/99 | 10 yds | 8 yds old | slurry wall panel M-46, I-93 Northbound Tunnel |
| 24(f) | 175; 4/22/99 | 10 yds | 3.5 yds old/non-spec. | slurry wall panel M-46, I-93 Northbound Tunnel |
| 24(g) | 162; 5/7/99 | 10 yds | 2 yds old/non-spec. | slurry wall panel M-43, I-93 Northbound Tunnel |
| 24(h) | 115; 5/7/99 | 10 yds | 8 yds old | slurry wall panel M-43, I-93 Northbound Tunnel |
| 24(i) | 207; 5/7/99 | 10 yds | 4 yds old | slurry wall panel M-45, I-93 Northbound Tunnel |
| 24(j) | 206; 5/28/99 | 11 yds | 10 yds old | slurry wall panel E-13, I-93 Northbound Tunnel |

| 24(k) | 188;<br>5/28/99 | 10 yds | 10 yds<br>non-spec. | slurry wall panel<br>E-13, I-93<br>Northbound Tunnel |
|---|---|---|---|---|
| 24(l) | 210;<br>5/28/99 | 10 yds | 2.5 yds<br>old/non-spec. | slurry wall panel<br>E-13, I-93<br>Northbound Tunnel |
| 24(m) | 181;<br>5/28/99 | 10 yds | 1 yd<br>old/non-spec. | slurry wall panel<br>E-13, I-93<br>Northbound Tunnel |
| 24(n) | 175;<br>6/2/00 | 11 yds | 10 yds<br>old/non-spec. | slurry wall panel<br>M-4a, I-93<br>Northbound Tunnel |
| 24(o) | 159;<br>7/20/00 | 10 yds | 8 yds old | deep duct shaft<br>panel #1, I-93<br>Northbound Tunnel |
| 24(p) | 225;<br>8/9/00 | 10 yds | 10 yds<br>old/non-spec. | deep duct shaft<br>panel #4, I-93<br>Northbound Tunnel |
| 24(q) | 170;<br>8/9/00 | 10 yds | 3 yds<br>old/non-spec. | deep duct shaft<br>panel #4, I-93<br>Northbound Tunnel |
| 24(r) | 209;<br>9/1/00 | 10 yds | 7 yds<br>old/non-spec. | slurry wall panel<br>M-18, I-93<br>Northbound Tunnel |
| 24(s) | 212;<br>9/1/00 | 10 yds | 6 yds<br>old/non-spec. | slurry wall panel<br>M-18, I-93<br>Northbound Tunnel |
| 24(t) | 159;<br>9/1/00 | 10 yds | 7 yds<br>old/non-spec. | slurry wall panel<br>M-18, I-93<br>Northbound Tunnel |
| 24(u) | 173;<br>9/12/00 | 10 yds | 4 yds old | slurry wall panel<br>TW-06, Silver<br>Line Transit-way |
| 24(v) | 178;<br>10/17/00 | 10 yds | 6 yds<br>old/non-spec. | slurry wall panel<br>M-15a, I-93<br>Northbound Tunnel |
| 24(w) | 111;<br>5/4/01 | 10 yds | 8 yds<br>old/non-spec. | sidewalks, I-93<br>Northbound Tunnel |

| 24(x) | 231;<br>5/4/01 | 11 yds | 5 yds old | sidewalks, I-93<br>Northbound Tunnel |
| 24(y) | 242<br>5/14/01 | 10 yds | 10 yds<br>old/non-spec. | base slab NB1-<br>1bs, I-93<br>Northbound Tunnel |
| 24(z) | 233;<br>5/14/01 | 11 yds | 8 yds<br>old/non-spec. | mud mat, Ramp ACN |

25. Overt Acts regarding C09A4:

| Overt<br>Act | Truck No.<br>and<br>Delivery<br>Date | Total<br>Amount<br>of<br>Concrete<br>Load | Amount of Old<br>and/or<br>Non-Spec.<br>Concrete<br>Delivered | Location of<br>Concrete<br>Placement |
|---|---|---|---|---|
| 25(a) | 157;<br>6/28/99 | 8 yds | 5 yds old | drilled shaft<br>310, Ramp D, I-93<br>Northbound |
| 25(b) | 176;<br>6/28/99 | 10 yds | 10 yds old | drilled shaft<br>309, Ramp D, I-93<br>Northbound |
| 25(c) | 161;<br>11/2/99 | 10 yds | 10 yds<br>old/non-spec. | drilled shaft<br>frn3-f, Ramp LL,<br>I-93 Northbound |
| 25(d) | 204;<br>11/2/99 | 11 yds | 10 yds<br>old/non-spec. | drilled shaft<br>frn3-f, Ramp LL,<br>I-93 Northbound |
| 25(e) | 147;<br>11/16/99 | 10 yds | 5 yds<br>old/non-spec. | mud mat, viaduct<br>ramp MW101a, I-93<br>Northbound |
| 25(f) | 200;<br>5/10/00 | 11 yds | 11 yds old | base slab, Ramp<br>D, I-93<br>Northbound |
| 25(g) | 116;<br>5/10/00 | 10 yds | 10 yds<br>old/non-spec. | base slab, Ramp<br>D, I-93<br>Northbound |
| 25(h) | 231;<br>5/11/00 | 10 yds | 5 yds<br>old/non-spec. | drilled shaft<br>410, Ramp L, I-93<br>Northbound |

14

| 25(i) | 139;<br>1/12/01 | 10 yds | 10 yds<br>old/non-spec. | wall, Ramp L,<br>I-93 Northbound |
| 25(j) | 164;<br>2/1/02 | 10 yds | 8 yds<br>old/non-spec. | barrier, Viaduct<br>Ramp XX, Viaduct<br>Ramp HOV-EB, and<br>Viaduct I-93<br>Northbound |

26. Overt Acts regarding C17A6

| Overt<br>Act | Truck<br>No.<br>and<br>Delivery<br>Date | Total<br>Amount<br>of<br>Concrete<br>Load | Amount of Old<br>and/or<br>Non-Spec.<br>Concrete<br>Delivered | Location of<br>Concrete<br>Placement |
| --- | --- | --- | --- | --- |
| 26(a) | 215;<br>5/10/02 | 10 yds | 1 yd<br>old/non-spec. | slurry wall panel<br>DL-15, Wall D,<br>I-93 Southbound<br>Tunnel |
| 26(b) | 209;<br>5/10/02 | 10 yds | 9.5 yds<br>old/non-spec. | slurry wall panel<br>DL-15, Wall D,<br>I-93 Southbound<br>Tunnel |
| 26(c) | 162;<br>5/22/02 | 10 yds | 8 yds<br>old/non-spec. | slurry wall panel<br>DL-13, Wall D,<br>I-93 Southbound<br>Tunnel |
| 26(d) | 226;<br>5/22/02 | 10 yds | 5 yds<br>old/non-spec. | slurry wall panel<br>DL-13, Wall D,<br>I-93 Southbound |
| 26(e) | 205;<br>1/16/03 | 11 yds | 6.5 yds old | wall, Ramp CSSA,<br>I-93 |

27.  Overt Acts regarding C17A9

| Overt Act | Truck No. and Delivery Date | Total Amount of Concrete Load | Amount of Old and/or Non-Spec. Concrete Delivered | Location of Concrete Placement |
|---|---|---|---|---|
| 27(a) | 121; 10/6/99 | 10 yds | 10 yds old/non-spec. | drilled shaft UC-4, I-93 Viaduct Support |
| 27(b) | 158; 10/29/99 | 10 yds | 10 yds old/non-spec. | base slab, NB-13A, I-93 Northbound Tunnel |
| 27(c) | 202; 10/29/99 | 10 yds | 10 yds old/non-spec. | base slab, NB-13A, I-93 Northbound Tunnel |
| 27(d) | 242; 11/4/99 | 10 yds | 6 yds old/non-spec. | slurry wall panel W-59, I-93 Southbound Tunnel |
| 27(e) | 234; 11/12/99 | 10 yds | 9 yds old/non-spec. | slurry wall panel W-66, I-93 Southbound Tunnel |
| 27(f) | 175; 5/27/00 | 10 yds | 10 yds old | base slab, NB-16A or Wall SB-22, I-93 Tunnel |
| 27(g) | 171; 8/10/00 | 10 yds | 6 yds old/non-spec. | base slab, Ramp CNSA, I-93 Northbound |
| 27(h) | 161; 10/27/00 | 11 yds | 8 yds old/non-spec. | base slab, Ramp RT-7, I-93 Northbound |
| 27(i) | 222; 11/16/00 | 11 yds | 10 yds old/non-spec. | roof slab, AA1-AA6, I-93 Southbound Tunnel |
| 27(j) | 231; 11/17/00 | 10 yds | 3 yds old/non-spec. | roof slab, Z13-AA1, I-93 Southbound Tunnel |

16

| 27(k) | 181; 11/22/00 | 9 yds | 5 yds old/non-spec. | mud mat, Ramp RT-2, I-93 Northbound |
|-------|---------------|-------|---------------------|-------------------------------------|
| 27(l) | 209; 3/19/01 | 11 yds | 8 yds old/non-spec. | mud mat, SB-18, I-93 Southbound Tunnel |
| 27(m) | 216; 3/26/01 | 11 yds | 11 yds old | mud mat, SB-19, SB-20, I-93 Southbound Tunnel |
| 27(n) | 214; 3/27/01 | 11 yds | 11 yds old | mud mat, SB-19, I-93 Southbound Tunnel |
| 27(o) | 177; 3/27/01 | 11 yds | 10 yds old/non-spec. | mud mat, SB-19, I-93 Southbound Tunnel |
| 27(p) | 118; 4/6/01 | 10 yds | 10 yds old | Wall D, Sections 7 and 10, I-93 Southbound Tunnel |
| 27(q) | 185; 4/23/01 | 10 yds | 7 yds old/non-spec. | roof slab, AA-7 to AA-10 and CC-3 to DD-4, I-93 Southbound Tunnel |
| 27(r) | 225; 5/10/01 | 11 yds | 7 yds old | base slab, Ramp CS-P8, I-93 Southbound |
| 27(s) | 188; 5/10/01 | 10 yds | 10 yds old | base slab, Ramp CS-P8, I-93 Southbound |
| 27(t) | 134; 6/8/01 | 10 yds | 6 yds old/non-spec. | slurry wall panel TE-15, MBTA Station |
| 27(u) | 202; 6/15/01 | 10 yds | 10 yds old | slurry wall panel TE-4N, MBTA Station |
| 27(v) | 214; 6/20/01 | 10 yds | 6 yds old/non-spec. | slurry wall panel TE-7N, MBTA Station |

| 27(w) | 188;<br>6/20/01 | 10 yds | 5 yds<br>old/non-spec. | slurry wall panel<br>TE-7N, MBTA<br>Station |
| 27(x) | 158;<br>8/10/01 | 11 yds | 6 yds<br>old/non-spec. | wall A, Ramp CS-<br>P, I-93<br>Southbound |
| 27(y) | 249;<br>8/24/01 | 10 yds | 5 yds<br>old/non-spec. | slurry wall panel<br>TE-12, MBTA<br>Station |

28.  Overt Acts regarding C09B1

| Overt<br>Act | Truck No.<br>and<br>Delivery<br>Date | Total<br>Amount<br>of<br>Concrete<br>Load | Amount of Old<br>and/or<br>Non-Spec.<br>Concrete<br>Delivered | Location of<br>Concrete<br>Placement |
|---|---|---|---|---|
| 28(a) | 130;<br>10/28/99 | 9 yds | 5 yds old/non<br>spec. | drilled shaft 3,<br>Section 3, I-90<br>Eastbound Tunnel |
| 28(b) | 110;<br>11/1/99 | 10 yds | 7 yds<br>old/non-spec. | drilled shaft 5,<br>Section 1, I-90<br>Westbound Tunnel |
| 28(c) | 116;<br>11/1/99 | 9 yds | 9 yds<br>old/non-spec. | drilled shaft 5,<br>Section 1, I-90<br>Westbound Tunnel |
| 28(d) | 226;<br>8/31/00 | 11 yds | 10 yds<br>old/non-spec. | drilled shaft 6,<br>Section 2, I-90<br>Eastbound Tunnel |
| 28(e) | 159;<br>9/14/00 | 10 yds | 10 yds<br>old/non-spec. | drilled shaft 18,<br>Section 2, I-90<br>Westbound Tunnel |
| 28(f) | 233;<br>4/20/01 | 11 yds | 11 yds old | base slab, Ramp<br>L, I-90 Eastbound |
| 28(g) | 232;<br>7/5/01 | 11 yds | 11 yds old | wall, Ramp L,<br>Section 7, I-90<br>Eastbound |

18

| 28(h) | 111;<br>1/2/02 | 10 yds | 10 yds<br>old/non-spec. | east side interior wall, columns 8 and 9, I-90 Eastbound Tunnel |
| 28(i) | 186;<br>1/22/02 | 10 yds | 10 yds<br>old/non-spec. | duct shaft section 1, I-90 Westbound Tunnel |
| 28(j) | 162;<br>4/1/02 | 11 yds | 10 yds<br>old/non-spec. | ballast to sink tunnel tubes, Fort Point Channel, Section 2, I-90 Westbound Tunnel |
| 28(k) | 207;<br>4/5/02 | 10 yds | 5 yds<br>old/non-spec. | east seawall, Fort Point Channel |
| 28(l) | 154;<br>4/5/02 | 10 yds | 1 yd<br>old/non-spec. | east seawall, Fort Point Channel |
| 28(m) | 208;<br>4/5/02 | 10 yds | 3 yds<br>old/non-spec. | east seawall, Fort Point Channel |
| 28(n) | 179;<br>4/5/02 | 10 yds | 4 yds<br>old/non-spec. | east seawall, Fort Point Channel |
| 28(o) | 178;<br>5/7/02 | 10 yds | 10 yds<br>old/non-spec. | walls 3 and 4, I-90 Westbound Tunnel |
| 28(p) | 252;<br>2/24/03 | 10 yds | 5 yds<br>old/non-spec. | east seawall, Fort Point Channel |
| 28(q) | 254;<br>2/24/03 | 10 yds | 5 yds<br>old/non-spec. | east seawall, Fort Point Channel |

All in violation of Title 18, United States Code, Section 286.

19

Dated: July 26, 2006

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By:    Fred M. Wyshak, Jr.
       Anthony E. Fuller
       Jeffrey M. Cohen
       Assistant U.S. Attorneys

20