**07  CR  10.2 4 2  JLT**
FILED
IN CLERKS OFFICE



**U.S. Department of Justice**

*Michael J. Sullivan*  ₱ 12: 47
*United States Attorney*
*District of Massachusetts* COURT
                          OF MASS.

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

July 26, 2007

R. Robert Popeo, Esq.
Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111

> Re:  Aggregate Industries Northeast Region, Inc. F/K/A
>      Bardon Trimount

Dear Mr. Popeo:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney"), the Attorney General for the Commonwealth of Massachusetts ("the Mass AGO"), (hereinafter collectively "the Government") and your client, Aggregate Industries Northeast Region, Inc. F/K/A Bardon Trimount ("Defendant").  The Agreement is as follows:

1.   Entry of Plea

At the earliest practicable date, Defendant agrees to waive prosecution by indictment and to plead guilty to a one count Information charging the defendant with violating Title 18, United States Code, Section 286 (Conspiracy to defraud the Government with respect to claims), a copy of which is attached hereto as "Exhibit A."  Defendant expressly and unequivocally admits that it in fact knowingly, intentionally and willfully committed the crime charged in the Information, and is in fact guilty of that offense.

It is the intention of the parties that this plea will cover any and all of Defendant's federal and state criminal liability in connection with Defendant's participation in:

a.   a scheme to deliver non-compliant concrete to federal and state highway projects particularly the Central Artery/Tunnel

Project (hereinafter "CA/T") between 1996 and 2005 as described in the attached Information;

     b.   a scheme to rig bids on several municipal paving contracts between 1996 and 2004;

     c.   predatory and anti-competitive practices in connection with the bidding or performance of bituminous concrete "hot mix" road paving and repair contracts and/or the sale or supply of bituminous concrete road paving materials in the states of Massachusetts and New Hampshire between 1996 and 2005; and

     d.   any other conduct known to the U.S. Attorney prior to the date of the execution of this Agreement, including criminal activity regarding other municipal, state and federal highway projects.

Additional criminal activity not alleged in the above described Information, and not described above in subparagraphs a through d is not covered by the terms of this Agreement. It is incumbent upon Defendant to make a full and complete disclosure to the Government regarding additional criminal activity in order to resolve criminal liability for that activity by way of this Agreement.

It is also the intention of the parties that this plea in conjunction with the attached Civil Settlement Agreement (attached hereto as "Exhibit B") and side letter with the Federal Highway Administration (FHWA) (attached hereto as "Exhibit C") will cover any and all civil liability to the state and federal governments that Defendant may incur in connection with Defendant's participation in the criminal activity set forth in the attached Information and the criminal activity described above in subparagraphs a through d.

## 2. Penalties

Defendant is subject to a fine of $500,000, or twice the gross gain derived from the offense or twice the gross loss to a person other than the defendant, whichever is greatest. *See* 18 U.S.C. §§ 3571(c),(d).

The parties agree that the gross loss resulting from the offense is approximately $5,200,000, and the maximum fine is, therefore, $10,400,000. The parties have arrived at this figure through an analysis of Defendant's paper and computer records as well as through extrapolation from those records to include instances of fraud where there is an absence of records.

     In summary, this analysis showed that approximately 5,700
loads of non-compliant concrete were delivered to the CA/T
between 1996 and 2005.  Additionally, approximately 800 loads of
non-compliant concrete were delivered to other public highway
jobs during this time period.  These loads comprised
approximately 64,163 yards of non-compliant concrete at an
average cost of $80.90 per yard yielding a total gross loss of
approximately $5,191,103.

     The defendant is also subject to a maximum term of probation
of five years, and a special assessment of $400.  The Court may
also order the defendant to pay restitution to the victims of the
offense.

## 3.  Sentencing Guidelines

     The parties agree to take the following positions at
sentencing with respect to the application of the United States
Sentencing Guidelines:

-   a.  The Guideline Manual in effect at the time of
        defendant's plea should be used in determining the
        defendant's sentence.  *See* U.S.S.G. § 1B1.11(b)(3).

-   b.  Per U.S.S.G. § 8C2.4(a), the base fine is the greatest
        of the amount of fine determined by reference to
        U.S.S.G. § 8C2.4(d) corresponding to the calculated
        offense level, the gross pecuniary gain to the
        organization from the offense, or the pecuniary loss
        from the offense caused by the organization.

    -   (1)  Calculated offense level is 26 with a
             corresponding offense level fine table
             amount of $3,700,000, determined as
             follows:

        -   (i)   The base offense level under the fraud
                  guideline is six (6) pursuant to U.S.S.G. §
                  2B1.1(a)(2).

        -   (ii)  The pecuniary loss from the offense is in
                  excess of $2,500,000, but less than
                  $7,000,000, thereby adding 18 levels pursuant
                  to U.S.S.G. § 2B1.1(b)(1)(J).

        -   (iii) The offense involved use of sophisticated
                  means, thereby adding two (2) levels pursuant
                  to U.S.S.G. § 2B1.1(b)(9).

3

(iv) The total offense level is 26.

(v) A total base offense level of 26 has a corresponding fine of $3,700,000 pursuant to U.S.S.G. § 8C2.4(d).

(2) Base fine is $5,200,000, determined as follows:

  (i) Pursuant to U.S.S.G. § 8C2.4(a)(3), the pecuniary loss from the offense caused by the organization was $5,200,000.

  (ii) The base fine is therefore $5,200,000 pursuant to U.S.S.G. § 8C2.4(a) which requires the greater of the table amount or the pecuniary loss.

c. Calculating the Multiplier: 1.4 - 2.8

(1) Pursuant to U.S.S.G. § 8C2.5, the culpability score is 7 determined as follows:

  (i) Base culpability score is 5 pursuant to U.S.S.G. § 8C2.5(a);

  (ii) Add 4 points pursuant to U.S.S.G. §§ 8C2.5(b)(2)(A)(i), 8C2.5(b)(2)(A)(ii), in that the organization within which the offense was committed had 1000 or more employees, the organization had less than 5,000 employees, an individual within the high-level personnel of the organization participated in and condoned the offenses, and tolerance of the offenses by substantial authority personnel was pervasive throughout the organization;

  (iii)Deduct two (2) points pursuant to U.S.S.G. § 8C2.5(g)(2).

  (iv) Total culpability score is 7.

(2) Pursuant to U.S.S.G. § 8C2.6, the appropriate multiplier range associated with a culpability score of 7 is 1.4 to 2.8.

d. Guideline Fine Range: $7,280,000 - $14,560,000.

4

        (1)    Minimum guideline fine is $7,280,000, determined
               pursuant to U.S.S.G. § 8C2.7(a) by multiplying
               $5,200,000 by 1.4.

        (2)    Maximum guideline fine is $14,560,000, determined
               pursuant to U.S.S.G. § 8C2.7(b) by multiplying
               $14,560,000 by 2.8.

e.    The parties agree that (1) disgorgement pursuant to
     U.S.S.G. § 8C2.9 is not necessary, (2) there is no
     basis for a downward departure under the U.S.S.G. and
     (3) that a fine within the guideline range will result
     in a reasonable sentence taking into consideration all
     of the factors set forth in 18 U.S.C. §§ 3553(a), 3572.

## 4.  Agreed Disposition

The parties agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following sentence is the appropriate disposition of the Information:

a.    a criminal fine in the amount of seven million two
     hundred eighty thousand dollars ($7,280,000) to be paid
     within one week of the date of sentencing; and

b.    a mandatory special assessment of $400 pursuant to 18
     U.S.C. 3013, which shall be paid to the Clerk of Court
     on or before the date of sentencing; and

c.    a payment of $50,000,000 with the exception of criminal
     fines and court costs into a fund as directed in the
     Civil Settlement Agreement (attached hereto as "Exhibit
     B"). It is the intent of the parties that this money
     will be administered by the Government for the sole
     purpose of maintaining the CA/T. Defendant understands
     and agrees that the actual vehicle for holding this
     money as well as the manner chosen to administer this
     fund is within the sole discretion of the Government.

d.    Defendant also agrees to divest its Boston based
     asphalt plant located at 1586 Hyde Park Avenue Hyde
     Park, Massachusetts 02136-2458 within 180 days from the
     entry of its plea. The transaction is subject to
     approval by the Government to ensure that the acquiring
     entity has no financial, familial, or personal
     relationship with the Defendant or any officers or
     employees of the Defendant. Defendant also agrees not
     to acquire or construct an asphalt plant located within

5

the city limits of Boston for a period of ten years. The agreed purpose of this provision is to encourage a more competitive environment in the asphalt and paving industry in the City of Boston.

e.   Defendant also agrees to employ at Defendant's expense an in-house monitor for a period of five years from the entry of Defendant's plea or until all monies due and owing under this Agreement are paid, but in no event shall the period of monitorship be less than three years from the entry of Defendant's plea.   This monitor will be employed consistent with the terms of the attached FHWA settlement agreement, and will report monthly to a government committee composed of a representative from the U.S. Attorney, the Mass AGO, and FHWA to ensure Defendant's compliance with the terms of this Agreement.

f.   In light of the pending civil actions: United States ex rel. Timothy Chase v. Aggregate Industries, Inc., C.A. No. 05-CV-11586 (D. Mass.); United States ex rel. Harrington, et al. v. Aggregate Industries, et al., C.A. No. 03-CV-11892 (D. Mass.); and Commonwealth of Massachusetts ex rel. Timothy B. Chase, Jr. v. Aggregate Industries, Inc., a subsidiary of Holcim, Ltd., Suffolk Superior Court No. 05-1936 (the "Civil Actions") and the Civil Settlement Agreement between Defendant and others and the United States relating to the civil actions which are being signed contemporaneously with this plea agreement, and attached hereto as Exhibit B, which requires the payment of $50,000,000 as set forth above, the parties agree that there is no need to order restitution in this case.  See 18 U.S.C. 3663(a)(3).  Therefore, the United States agrees that it will not seek a separate restitution order as part of the resolution of this case, and the parties agree that the appropriate disposition of this case does not include a restitution order.

g.   Consistent with the terms of the FHWA settlement agreement, Defendant agrees to implement a new Corporate Integrity Agreement designed to prevent future violations of the law and to institute a new corporate culture aimed at compliance with state and federal regulations.

The U.S. Attorney and Defendant agree that there is no basis

6

for a departure or deviation under the factors set forth in 18
U.S.C. §3553(a) from the sentencing range established by the
United States Sentencing Guidelines.

5.   No Further Prosecution of Defendant

     Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the Government
agrees that, other than the charges in the attached Information,
it shall not further prosecute Defendant for conduct which falls
within the scope of the Information or is otherwise described in
subparagraphs a through d of paragraph 1.

     This declination is contingent on (1) the guilty plea of
Defendant being accepted by the Court and not withdrawn, and (2)
Defendant's performance of all of its obligations as set forth in
this Agreement, the attached Civil Settlement Agreement, and the
attached FHWA settlement agreement.  If Defendant's guilty plea
is not accepted by the Court or is withdrawn for any reason, or
if Defendant should fail to perform an obligation under this
Agreement or the Civil Settlement Agreement or the FHWA
settlement agreement, this declination of prosecution shall be
null and void.

     The Government expressly reserves the right to prosecute any
individual, including but not limited to present and former
officers, directors, employees, and agents of Defendant, in
connection with the conduct encompassed by this plea agreement,
within the scope of the grand jury investigation, or known to the
U.S. Attorney.

6.   Payment of Mandatory Special Assessment

     Defendant agrees to pay the mandatory special assessment to
the Clerk of the Court on or before the date of sentencing,
unless Defendant establishes to the satisfaction of the Court
that Defendant is financially unable to do so.

7.   Waiver of Rights to Appeal and to Bring Collateral Challenge

     Defendant is aware that it has the right to challenge its
sentence and guilty plea on direct appeal.  Defendant is also
aware that it may, in some circumstances, be able to argue that
its plea should be set aside, or its sentence set aside or
reduced, in a collateral challenge (such as pursuant to a motion
under 28 U.S.C. § 2255).

     In consideration of the concessions made by the Government
in this Agreement, Defendant knowingly and voluntarily waives its

7

right to appeal or collaterally challenge:

> (1) Defendant's guilty plea and any other aspect of Defendant's conviction; and
>
> (2) The imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney pursuant to this agreement.

Defendant's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect.

This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the U.S. Attorney therefore retains his appeal rights.

8.  Cooperation

Defendant shall cooperate completely and truthfully in any trial or other proceeding arising out of any ongoing federal grand jury investigation of its current and former officers, agents, and employees. Defendant shall make reasonable efforts to facilitate access to, and to encourage the cooperation of, its current and former officers, agents, and employees for interviews sought by law enforcement agents, upon request and reasonable notice. Defendant shall also take reasonable measures to encourage its current and former officers, agents, and employees to testify truthfully and completely before any grand jury, and at any trial or other hearing, at which they are requested to do so by any government entity.

Provided, however, notwithstanding any provision of this agreement, that: (1) Defendant is not required to request of its current or former officers, agents, or employees that they forego seeking the advice of an attorney nor that they act contrary to that advice; and (2) Defendant is not required to take any action against its officers, agents, or employees for following their attorney's advice.

In addition, Defendant shall furnish to law enforcement agents, upon request, all documents and records in its possession, custody or control that are relevant to the government's inquiries.

Defendant specifically agrees to waive any attorney-client

8

privilege or claim of work product protection with respect to any
interviews of (a) its current officers and employees, (b) its
former officers and employees, and (c) any other individual,
conducted in connection with the present criminal investigation
by the Government.  This waiver includes within its scope any
notes, memoranda, summaries or other documentation of any such
interviews.  Defendant further agrees to provide such
documentation, including a list of all persons interviewed, to
the Government within thirty days of the entry of defendant's
plea.

If the U.S. Attorney determines that Defendant has breached
this Agreement by making any false, incomplete or misleading
statement, or by providing any false, incomplete or misleading
information to any law enforcement personnel, grand jury or
court, the U.S. Attorney may terminate this Agreement as set
forth below, and may also prosecute Defendant for any and all
offenses that could be charged against it in the District of
Massachusetts, including, but not limited to, false statements
and perjury.

## 9.   Probation Department Not Bound By Agreement

The sentencing disposition agreed upon by the parties and
their respective calculations under the Sentencing Guidelines are
not binding upon the United States Probation Office.  Defendant's
plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C).
Defendant cannot withdraw his plea of guilty unless the
sentencing judge rejects this Agreement.  If the sentencing judge
rejects this Agreement, this Agreement shall be null and void at
the option of either the United States or Defendant.  In this
regard, Defendant hereby waives any defense to any charges which
he might otherwise have under any statute of limitations or the
Speedy Trial Act.

## 10.   Fed. R. Crim. P. 11(c)(1)(C) Agreement

Defendant's plea will be tendered pursuant to Fed. R. Crim.
P. 11(c)(1)(C).  Defendant cannot withdraw its plea of guilty
unless the sentencing judge rejects this Agreement or fails to
impose a sentence consistent herewith.  If the sentencing judge
rejects this Agreement or fails to impose a sentence consistent
herewith, this Agreement shall be null and void at the option of
either the United States or Defendant.

Defendant may seek sentencing by the District Court
immediately following the Rule 11 plea hearing.  The United
States does not object to the Court proceeding to sentence

9

Defendant immediately following the Rule 11 plea hearing or in
the absence of a Presentence Report in this case. Defendant
understands that the decision whether to proceed immediately
following the plea hearing with the sentencing proceeding, and to
do so without a Presentence Report, is exclusively that of the
United States District Court.

## 11. Civil and Administrative Liability

By entering into this Agreement, the United States does not
compromise any civil liability except as specifically set forth
in the Civil Settlement Agreement, including but not limited to
any tax liability which Defendant may have incurred or may incur
as a result of its conduct and its plea of guilty to the attached
Information.

Defendant's civil liability to the United States and the
Commonwealth of Massachusetts in connection with the matters
described in the attached Information and in subparagraphs a
through c in paragraph 1 of this Agreement is resolved in the
Civil Settlement Agreement, attached as Exhibit B, according to
the terms set forth in that Agreement.

## 12. Waiver of Defenses

If Defendant's guilty plea is not accepted by the Court for
whatever reason, or is later withdrawn for whatever reason,
Defendant hereby waives, and agrees it will not interpose, if
charges are filed within six months of the date on which such
guilty plea is rejected or withdrawn, any defense to any charges
brought against it which it might otherwise have under any
statute of limitations or the Speedy Trial Act.

## 13. Breach of Agreement

If the U.S. Attorney determines that Defendant has
materially breached any material obligation under this Agreement,
the U.S. Attorney may, at his sole option, be released from his
commitments under this Agreement in its entirety by notifying
Defendant, through counsel or otherwise, in writing. The
Government may also pursue all remedies available under the law,
even if it elects not to be released from its commitments under
this Agreement. Defendant recognizes that no such breach by
Defendant of an obligation under this Agreement shall be grounds
for withdrawal of its guilty plea. Defendant understands that
should it materially breach any material obligation under this
Agreement, the Government will have the right to use against
Defendant before any grand jury, at any trial or hearing, or for

10

sentencing purposes, any statements which may be made by
Defendant, and any information, materials, documents or objects
which may be provided by it to the government subsequent to this
Agreement, without any limitation.  The government agrees that ,
in the event of such material breach, consistent with the meaning
of the Double Jeopardy clause of the United States Constitution,
the Government cannot and will not prosecute Defendant for
conduct charged in the Information, so long as Defendant does not
withdraw its guilty plea.

        In the event Defendant at any time hereafter materially
breaches any material obligations under this Agreement, Defendant
understands that (1) the Government will as of the date of that
breach be relieved of any obligations it may have in this
Agreement, the attached Civil Settlement Agreement, and the
attached FHWA settlement agreement including but not limited to
the promise not to further prosecute Defendant as set forth in
paragraph 5 of this Agreement; and (2) Defendant will not be
relieved of its obligation to make the payments set forth in this
Agreement and the attached Civil Settlement Agreement, nor will
it be entitled to return of any monies already paid.  Moreover,
in the event of a breach, Defendant hereby waives, and agrees it
will not interpose, any defense to any additional charges brought
against it which it might otherwise have under any statute of
limitations, or the Speedy Trial Act.

        Defendant understands and agrees that this 11(c)(1)(C) plea
agreement and its agreed upon criminal disposition:

        (a)  are wholly dependent upon Defendant's timely compliance
with the provisions of the attached Civil Settlement Agreement,
including the requirement in the agreement that Defendant pay to
the Government $50,000,000 less criminal fines and court costs
plus interest calculated at the post judgement rate under the
Debt Collection Act, 28 U.S.C. 1961, on any outstanding amount
commencing on the date Defendant enters its plea continuing until
and including the day before complete payment is made in accord
with the terms of the Civil Settlement Agreement; and that

        (b)  failure by Defendant to comply fully with the terms of
this Agreement or the attached Civil Settlement Agreement will
constitute a breach of this Agreement.

        The Government may, at its sole option, be released from its
commitments under this Agreement, including, but not limited to,
its agreement in this paragraph regarding the appropriate
disposition of this case, if at any time between Defendant's
execution of this Agreement and sentencing Defendant:

(a) Fails to admit a complete factual basis for the plea;

(b) Fails to truthfully admit its conduct in the offenses. of conviction;

(c) Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

(d) Fails to provide truthful information about its financial status;

(e) Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

(f) Engages in acts which form a basis for finding that Defendant has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

(g) Commits a crime; and/or

(h) Attempts to withdraw its guilty plea.

Defendant expressly understands that it may not withdraw its plea of guilty, unless the Court rejects this Agreement pursuant to Fed. R. Crim. P. 11(c)(5).

14.  Corporate Authorization

Defendant's acknowledgment of this Agreement and execution of this Agreement on behalf of the corporation is attached hereto as "Exhibit D." Defendant shall provide to the Government and the Court a certified copy of a resolution of the Board of Directors of Aggregate Industries Northeast Region, Inc., affirming that the Board of Directors has authority to enter into this Plea Agreement and has (1) reviewed the Information in this case and the proposed Plea Agreement; (2) consulted with legal counsel in connection with the matter; (3) voted to enter into the proposed Plea Agreement; (4) voted to authorize Defendant to plead guilty to the charges specified in the Information; and (5) voted to authorize the corporate officer identified below to execute the Plea Agreement and all other documents necessary to carry out the provisions of the Plea Agreement.  A copy of the resolution is attached hereto as "Exhibit E." Defendant agrees that either a duly authorized corporate officer or a duly authorized attorney for Defendant, at the discretion of the

Court, shall appear on behalf of Defendant and enter the guilty plea and will also appear for the imposition of sentence.

## 15.  Who Is Bound By Agreement

Except as set forth below, this Agreement is limited to the U.S. Attorney for the District of Massachusetts and the Attorney General for the Commonwealth of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.  The U.S. Attorney represents that the Antitrust Division of the U.S. Department of Justice has agreed to be bound by the terms of this plea agreement.

## 16.  Complete Agreement

This Agreement, together with the Civil Settlement Agreement and the FHWA settlement agreement, set forth the complete and only agreement between the Parties relating to the disposition of this matter.  No promises, representations, agreements or conditions have been entered into other than those set forth in this letter and its Exhibits A through E.  This Agreement supersedes prior understandings, if any, of the parties, whether written or oral.  This Agreement can be modified or supplemented only in a written memorandum signed by the parties or as agreed by the parties on the record in court.

If this letter accurately reflects the Agreement entered into between the United States and your client, Aggregate Industries Northeast Region, Inc., please have the authorized representative of Defendant sign the Acknowledgment of Agreement below.  Please also sign as Witness.  Return the original of this letter to Assistant U.S. Attorney Fred M. Wyshak, Jr. of the United States Attorney's Office for the District of Massachusetts.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

MARTHA COAKLEY
Attorney General for the
Commonwealth of Massachusetts

13